IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| 3XA WIRELESS, INC., an Illinois corporation, and MOGO WIRELESS, INC., a Georgia corporation, | ) ) ) ) | FILED: MAY 16, 2008<br>08CV2867   RCC<br>JUDGE DOW<br>MAGISTRATE JUDGE VALDEZ |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. |
| WILSON ELECTRONICS, INC., a Utah corporation, | ) ) ) | (JURY TRIAL DEMANDED) |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiffs, 3XA WIRELESS, INC. ("3XA") and MOGO WIRELESS, INC. ("Mogo") (collectively "3XA and Mogo" and "Plaintiffs"), by and through their attorneys, MOMKUS McCLUSKEY LLC, and for their complaint against Defendant, WILSON ELECTRONICS, INC. ("Wilson" and "Defendant"), allege and state as follows:

## PARTIES

1.      Plaintiff, 3XA, is a corporation formed and existing under the laws of the state of Illinois, with its principal place of business located in the city of Schaumburg, Cook County, Illinois.

2.      Plaintiff, Mogo, is a corporation formed and existing under the laws of the State of Georgia, with its principal place of business located in the city of Marietta, Cobb County, Georgia.

3.      Defendant, Wilson, is a corporation formed and existing under the laws of the State of Utah, with its principal place of business located in the city of St. George, Washington

1

County, Utah.

## JURISDICTION AND VENUE

4.      This is a civil action for false advertising brought by 3XA and Mogo pursuant to 15 U.S.C. § 1052 *et seq*.

5.      This action arises under the Lanham Act, 15 U.S.C. § 1125(a), and subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(b).

6.      Jurisdiction of this court is also founded upon 28 U.S.C. § 1367 for Plaintiffs' claims arising under state law.

7.      On information and belief, Defendant has transacted business, contracted to supply goods or services and has otherwise purposely availed itself of the privileges and benefits of the laws of the State of Illinois, and has committed tortious acts which have proximately caused injury within Illinois, and therefore is subject to the jurisdiction of this Court pursuant to 735 ILCS 5/2-209.    Defendant is a widely-known manufacturer and distributor of cell phone amplifiers, antennas, and related accessories, with dealer representatives in all 50 states, Canada, Mexico, Central America and South America.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391.

## BACKGROUND

9.      3XA is the developer of an easy-to-install, affordable, uni-directional dual-band wireless cellular signal amplifier that plugs into a car's cigarette lighter, as well as a second model that plugs into a computer's USB port.

10.     Testing by numerous organizations, including but not limited to Best Buy, RadioShack, the Federal Bureau of Investigation, the Georgia Highway Patrol, and the United States Postal Service, has shown that 3XA's design improves cell phone performance by

2

increasing signal strength, reducing dropped calls and improving call clarity.

11.    In connection with its design, 3XA received a grant of equipment authorization from the Federal Communications Commission, under FCC Identifier U4O8811960A.  3XA also has a patent pending with the United States Patent & Trademark Office.

12.    Pursuant to a licensing agreement, 3XA licensed its technology to Mogo for the manufacture, marketing, distribution, and advertising of the product.  In so doing, in exchange for quarterly payments of royalty fees, Mogo assumed full responsibility for the manufacturing, marketing, distribution and sale of the product and 3XA waived any right to influence the manufacturing, marketing, distribution and advertising of the product.

13.    Mogo, in turn, contracted with I.W.R.E., Inc., a non-party sales consultant, to provide product marketing and advertising and to assist in selling the product to individual consumers through various retail channels.

14.    The 3XA/Mogo products were known and distributed originally, in limited quantities, under the names "Mogo-Stix" and "Mogo-Port."

15.    Additionally, I.W.R.E., Inc., who manufactured its own unrelated 0.6W cellular signal amplifier system under the name "Call Capture," which was more of a commercial product, also sold and distributed the 3XA/Mogo product in limited quantities under the "Call Capture" name as Call Capture Stix and Port, providing a more consumer-oriented alternative to I.W.R.E.'s own 0.6W cellular signal amplifier system.

16.    The 3XA/Mogo products are now being manufactured, marketed, distributed, and advertised only under the name "Cell Ranger."

17.    3XA and Mogo are relatively new companies, and the technological approach behind their products is likewise, relatively new technology.

3

18.    Defendant, Wilson, touts itself as being a leader in the wireless communications industry for over 40 years, and manufactures and distributes in interstate commerce a wide range of amplifiers, antennas and accessories for use with cellular telephones and other related communication devices.

19.    Defendant actively competes with Plaintiffs and the 3XA/Mogo products by and through its manufacturing, marketing, and sale of its own Mobile Wireless Cellular Amplifier, its Mobile Wireless Dual-Band Amplifier, and other amplifiers, antennas and accessories for use with cellular telephones.

20.    On information and belief, at the 2008 CTIA Wireless Trade Show in Las Vegas, Nevada, from April 1, 2008 through April 3, 2008, and prior thereto, Wilson widely distributed what it labeled a "CONSUMER ALERT," in which Wilson boldly declared the 3XA/Mogo product as a "fake" and a "fraud." A true and accurate copy of this "CONSUMER ALERT" is attached hereto and made a part hereof as Exhibit A (Wilson's "First Known Consumer Alert").

21.    In addition to brazenly referring to the 3XA/Mogo product as "fake" and a "fraud," under the guise of protecting the public, Wilson furthermore claimed in the First Known Consumer Alert, amongst other things, that the 3XA/Mogo product "negatively impacts the performance of a cell phone," that it "fools the user," that it is not "properly designed," that it "tricks the phone," that it causes the phone to reduce output power to the cell site "which results in no connection between the phone and cell site," that it can "harm" cell phone performance, that the product "hurts the public" and "is a detriment to public safety," and, implicitly, that it performs poorly and is of no value by stating that the product "conveys to the public the impression that all cellular signal amplifiers perform poorly and are of no

4

value."

22.     On information and belief, besides widely disseminating Wilson's First Known Consumer Alert to guests and participants at the CTIA Wireless Trade Show, Wilson specially delivered its First Known Consumer Alert to nationwide distribution firms, retailers, Mogo customers and distributors, and prospective customers and distributors, including but not limited to Best Buy, Sams/Wal-Mart, DAS, and RadioShack.

23.     Subsequently, Defendant issued a revised "CONSUMER ALERT," a true and accurate copy of which is attached hereto and made a part hereof as Exhibit B (Wilson's "Second Known Consumer Alert")(collectively with the First Known Consumer Alert referenced as the "First and Second Known Consumer Alerts").

24.     While the Second Known Consumer Alert removed the all-capitalized, large-font word "FAKE" repeated at the top of the first document, used a different image of the product, and removed the prohibitory sign ("⊘") from overtop the product image, the substantive text of the Second Known Consumer Alert was identical to that of the First Known Consumer Alert, including statements that the 3XA/Mogo product "negatively impacts the performance of a cell phone," that it "fools the user," that it is not "properly designed," that it "tricks the phone," that it causes the phone to reduce output power to the cell site "which results in no connection between the phone and cell site," that it can "harm" cell phone performance, that the product "hurts the public" and "is a detriment to public safety," and, implicitly, that it performs poorly and is of no value by stating the product "conveys to the public the impression that all cellular signal amplifiers perform poorly and are of no value."

25.     On information and belief, Wilson caused its Second Known Consumer Alert to be delivered to nationwide distribution firms, retailers, Mogo customers and distributors, and

5

prospective customers and distributors, including but not limited to Best Buy, Sams/Wal-Mart, DAS, and RadioShack.

26.     These advertising and promotional claims are and were both false and misleading to consumers.

27.     Field testing shows that cell phone performance can be improved a great deal by amplifying only the downlink path (uni-directional amplification) and in most cases, when used correctly the 3XA/Mogo product improved the performance of the cell phone to the point where signal bar indicators consistently increased, dropped calls were reduced and call clarity reception was improved.

28.     In the majority of areas where cell phones, on their own, showed zero bars or only one bar of signal strength, cell phones using the 3XA/Mogo product consistently showed three to five bars of signal strength.

29.     In a test area where dropped calls were recorded on cell phones without use of the 3XA/Mogo product, no dropped calls occurred with use of the 3XA/Mogo product.

30.     Additionally, comparisons of sound quality in low receive signal areas between cell phones using the 3XA/Mogo product and those without, demonstrated significantly enhanced call clarity on the cell phones using the product.     Visual examination of the audio files demonstrated considerable missing segments on the phones that were without benefit of the 3XA/Mogo product when compared to the phones that utilized the 3XA/Mogo product.

31.     Defendant's false promotion and advertising, under the guise of a "consumer alert," is material to consumers' purchasing decisions, and is intended by Defendant to induce consumers to buy Wilson's own Mobile Wireless Cellular Amplifier, Mobile Wireless

Dual-Band Amplifier, and other Wilson amplifiers, antennas and accessories, rather than other competing products, and specifically, rather than the 3XA/Mogo product.

32.    Further, Defendant's false promotion and advertising is material to retailers' and distributors' decisions, and is intended by Defendant to induce retailers and distributors to sell and distribute Wilson's own Mobile Wireless Cellular Amplifier, Mobile Wireless Dual-Band Amplifier, and other Wilson amplifiers, antennas and accessories, rather than other competing products, and specifically, rather than the 3XA/Mogo product.

33.    On information and belief, consumers have purchased Wilson's own Mobile Wireless Cellular Amplifier, Mobile Wireless Dual-Band Amplifier, and other Wilson amplifiers, antennas and accessories, rather than other competing products, and specifically, rather than the 3XA/Mogo product, based on Defendant's advertising and promotion, including but not limited to Wilson's First and Second Known Consumer Alerts.

34.    On information and belief, retailers and distributors have chosen to sell and distribute Wilson's own Mobile Wireless Cellular Amplifier, Mobile Wireless Dual-Band Amplifier, and other Wilson amplifiers, antennas and accessories, rather than other competing products, and specifically, rather than the 3XA/Mogo product, based on Defendant's advertising and promotion, including but not limited to Wilson's First and Second Known Consumer Alerts.

### COUNT I

#### False Advertising, 15 U.S.C. § 1125(a)

35.    3XA and Mogo restate, reallege and incorporate by reference the allegations contained in paragraphs 1 through 34 of this Complaint, as if fully set forth herein.

36.    Defendant's statements set forth above regarding the efficacy of the

7

3XA/Mogo product in comparison to Defendant's and others' products, constitute words, terms, names, and devices, in commercial advertising or promotion, that misrepresent the nature, characteristics, and/or qualities of 3XA's and Mogo's goods, services, and/or commercial activities.

37.    Defendant's statements set forth above regarding the efficacy of the 3XA/Mogo products in comparison to Defendant's and others' products, are also false and/or misleading statements and representations of fact.

38.    As such, Defendant's statements set forth above regarding the efficacy of the 3XA/Mogo product in comparison to Defendant's and others' products constitute false advertising under 15 U.S.C. § 1125(a).

39.    Defendant's use of words, terms, names, and devices, in commercial advertising or promotion, that misrepresent the nature, characteristics, and/or qualities of 3XA's and Mogo's goods, services, and/or commercial activities, as well as Defendant's false and/or misleading statements, were done willfully, and Defendant will continue its false advertising unless enjoined by this Court.

40.    As a direct and proximate result of Defendant's acts of false advertising, 3XA and Mogo have suffered and continue to suffer damages, the precise amount of which has not yet been determined but will be proven at trial.

WHEREFORE, Plaintiffs, 3XA WIRELESS, INC. and MOGO WIRELESS, INC., respectfully request that this Court:

(a)    Enter judgment in their favor and against Defendant, WILSON ELECTRONICS, INC.;

(b)    Enter preliminary and permanent injunctions under 15 U.S.C. § 1116,

restraining and enjoining Defendant, its agents, servants, employees, officers and those persons acting in concert or participation with Defendant, from any false advertising or promotion concerning 3XA and/or Mogo products;

(c)     Award costs, profits, and damages, including treble damages under 15 U.S.C. § 1117;

(d)     Declare that this is an exceptional case under 15 U.S.C. § 1117, and award Plaintiffs' their attorneys' fees; and,

(e)     For what other and further relief that this Court deems just and appropriate.

## COUNT II

**Violation of the Illinois Uniform Deceptive Practices Act, 815 ILCS § 510/1 et. seq.**

41.     3XA and Mogo restate, reallege and incorporate by reference the allegations contained in paragraphs 1 through 40 of this Complaint, as if fully set forth herein.

42.     The Illinois Uniform Deceptive Practices Act, 815 ILCS § 510/1 *et. seq.*, prohibits persons and companies from engaging in deceptive, misleading and false advertising practices in Illinois.

43.     Defendant has engaged in practices in violation of section 2(a)(8) in the course of their false advertising and promotion, as described above, including at least "disparage[ing] the goods, services, or business of another by false or misleading representation of fact."

44.     As a direct and proximate result of Defendant's deceptive acts and business practices, 3XA and Mogo have suffered and continue to suffer damages, the precise amount of which has not yet been determined but will be proven at trial.

45.     Section 3 of the Act furthermore provides for injunctive relief where a person is likely to be damaged by a deceptive trade practice of another, and for costs or attorneys'

fees or both, if the court finds that the Defendant has wilfully engaged in a deceptive trade practice.

46.    3XA and Mogo are likely to be damaged by Defendant's aforementioned past deceptive practices into the future, and will certainly suffer additional damages if Defendant is permitted to continue to make and circulate false, misleading, deceptive and/or disparaging statements concerning the goods, services, and/or business of 3XA and Mogo, and therefore, injunctive relief is appropriate and warranted.

47.    Defendant's false, misleading, deceptive and/or disparaging statements concerning the goods, services, and/or business of 3XA and Mogo and its circulation of the First and Second Known Consumer Alerts, were done wilfully, and therefore, an award of costs and attorney's fees is appropriate and warranted.

WHEREFORE, Plaintiffs, 3XA WIRELESS, INC. and MOGO WIRELESS, INC., respectfully request that this Court:

(a)    Enter judgment in their favor and against Defendant, WILSON ELECTRONICS, INC., in an amount to be proven at trial;

(b)    Enter injunctive relief, restraining and enjoining Defendant, its agents, servants, employees, officers and those persons acting in concert or participation with Defendant, from any false advertising or promotion concerning 3XA and/or Mogo products;

(c)    Award Plaintiffs their costs and attorneys' fees; and,

(d)    For what other and further relief that this Court deems just and appropriate.

## COUNT III

### Common Law Disparagement of Good and Services

48.    3XA and Mogo restate, reallege and incorporate by reference the allegations

contained in paragraphs 1 through 47 of this Complaint, as if fully set forth herein.

49.    Defendant's aforementioned statements about 3XA and Mogo and the 3XA/Mogo product criticize the quality of 3XA's and Mogo's goods and services.

50.    The aforementioned statements about 3XA and Mogo and the 3XA/Mogo product are both untrue and misleading.

51.    The aforementioned statements about 3XA and Mogo and the 3XA/Mogo product were made by Defendant in order to influence or to tend to influence the public not to buy the 3XA/Mogo product.

52.    In making its statements and circulating them in the First and Second Known Consumer Alerts, Defendant knew the statements to be false and/or acted in reckless disregard of their truth or falsity.

53.    Defendant acted with malice, in that the aforementioned statements and circulation of the First and Second Known Consumer Alerts, made under the guise of protecting the public, in reality were uttered and circulated solely to induce consumers not to buy the product, to induce distributors not to distribute the product, and to induce retailers not to sell the product, and to otherwise effectively eliminate 3XA and Mogo as competitors in Defendant's marketplace.

54.    As a direct and proximate result, 3XA and Mogo have suffered damages, the precise amount of which has not yet been determined but will be proven at trial, including but not limited to delay and/or cancelation of anticipated preliminary sales in excess of $1,000,000.00 from anticipated orders of at least 19,300 units from retailers and distributors, including but not limited to DAS, Best Buy, WalMart and RadioShack and the loss of profits and/or royalty fees associated therewith, loss of profits and/or royalty fees

11

associated with anticipated subsequent and continuing orders from the various retailers and distributors, other lost profits, loss of good will, damage to reputation, and other compensatory and consequential damages.

55.    The actions of Defendant were undertaken with evil motive, were intentional, willful, wanton and outrageous, and therefore, punitive damages are appropriate and warranted.

WHEREFORE, Plaintiffs, 3XA WIRELESS, INC. and MOGO WIRELESS, INC., respectfully request that this Court:

(a)    Enter judgment in their favor and against Defendant, WILSON ELECTRONICS, INC., in an amount to be proven at trial;

(b)    Enter an award of punitive damages;

(c)    Award Plaintiffs their costs and attorneys' fees; and,

(d)    For what other and further relief that this Court deems just and appropriate.

### COUNT IV

#### Defamation *per se*

56.    3XA and Mogo restate, reallege and incorporate by reference the allegations contained in paragraphs 1 through 55 of this Complaint, as if fully set forth herein.

57.    The aforesaid statements by Defendant concerning 3XA, Mogo and the 3XA/Mogo product, are and were, entirely false.

58.    The statements, aforesaid, were made in the course of competition and were therefore, unprivileged.

59.    The statements, aforesaid, both imputed to Plaintiffs an inability to perform or want of integrity in the discharge of duties of office or employment and also constitute

statements that prejudice a party, or impute lack of ability, in his or her trade, profession or business.

60.    The aforesaid statements have precise and readily understood meanings, are verifiably untrue, and the literary and/or social context of the statements, i.e., contained in a "consumer alert" purportedly designed to protect the public and ensure public safety, signals that they have factual content.

61.    The aforesaid statements were made intentionally and maliciously for the sole purposes of bringing professional embarrassment and harm to 3XA and Mogo, to induce consumers not to buy the 3XA/Mogo product, to induce distributors not to distribute the 3XA/Mogo product, to induce retailers not to sell the 3XA/Mogo product, to otherwise effectively eliminate 3XA and Mogo as competitors in Defendant's marketplace, and to cause serious financial damage and hardship to Plaintiffs.

62.    Because the aforesaid statements both impute an inability to perform or want of integrity in the discharge of duties of office or employment on the part of 3XA and Mogo, and they prejudice 3XA and Mogo, and/or impute lack of ability, in their trade, profession and business, these statements constitute defamation *per se*.

63.    As a direct and proximate result of the aforesaid false and unprivileged statements made by Defendant, Plaintiffs have suffered injury to their professional reputations and other damages, to be proven at trial, including but not limited to delay and/or cancelation of anticipated preliminary sales in excess of $1,000,000.00 from anticipated orders of at least 19,300 units from retailers and distributors, including but not limited to DAS, Best Buy, WalMart and RadioShack and the loss of profits and/or royalty fees associated therewith, loss of profits and/or royalty fees associated with anticipated subsequent and continuing

13

orders from the various retailers and distributors, other lost profits, loss of good will, and other compensatory and consequential damages.

64.     The statements made and actions of Defendant were undertaken with evil motive, were intentional, willful, wanton and outrageous, and therefore, punitive damages are appropriate and warranted.

WHEREFORE, Plaintiffs, 3XA WIRELESS, INC. and MOGO WIRELESS, INC., respectfully request that this Court:

(a)     Enter judgment in their favor and against Defendant, WILSON ELECTRONICS, INC., in an amount to be proven at trial;

(b)     Enter an award of punitive damages;

(c)     Award Plaintiffs their costs and attorneys' fees; and,

(d)     For what other and further relief that this Court deems just and appropriate.

## COUNT V

### Defamation *per quod*

65.     3XA and Mogo restate, reallege and incorporate by reference the allegations contained in paragraphs 1 through 64 of this Complaint, as if fully set forth herein.

66.     As a direct and proximate result of the aforesaid false and unprivileged statements made by Defendant, Plaintiffs have suffered special damages, in addition to injury to their professional reputations, in that the actions and statements of Defendant have resulted in loss of income and earnings.

67.     As a direct and proximate result of the aforesaid false and unprivileged statements, certain retailers and distributors, including but not limited to DAS, Best Buy, WalMart and RadioShack, who had previously indicated a desire to carry the 3XA/Mogo

14

product in their retail stores and outlets, have delayed and/or have now refused to carry the product as a result of Defendant's statements, including the First and Second Known Consumer Alerts.

68.     As a direct and proximate result, 3XA and Mogo have been deprived of profits and royalty fees associated with anticipated preliminary sales in excess of $1,000,000.00 from anticipated orders of at least 19,300 units from retailers and distributors, including but not limited to DAS, Best Buy, WalMart and RadioShack, loss of profits and/or royalty fees associated with anticipated subsequent and continuing orders from the various retailers and distributors, other lost profits, loss of good will, damage to reputation, and other compensatory and consequential damages.

69.     The statements made and actions of Defendant were undertaken with evil motive, were intentional, willful, wanton and outrageous, and therefore, punitive damages are appropriate and warranted.

WHEREFORE, Plaintiffs, 3XA WIRELESS, INC. and MOGO WIRELESS, INC., respectfully request that this Court:

(a)     Enter judgment in their favor and against Defendant, WILSON ELECTRONICS, INC., in an amount to be proven at trial;

(b)     Enter an award of punitive damages;

(c)     Award Plaintiffs their costs and attorneys' fees; and,

(d)     For what other and further relief that this Court deems just and appropriate.

### COUNT VI

### False Light

70.     3XA and Mogo restate, reallege and incorporate by reference the allegations

15

contained in paragraphs 1 through 69 of this Complaint, as if fully set forth herein.

71.    Through the aforementioned statements and conduct on the part of Defendant, Plaintiffs have been placed in a false light before the public.

72.    The respective statements served to falsely accuse Plaintiffs of an inability to perform or want of integrity in the discharge of duties of office or employment, and have prejudiced Plaintiffs in their trade, profession and business.

73.    The false light into which Defendant's actions and statements have placed 3XA and Mogo, would be highly offensive to a reasonable person, in that being falsely accused of developing and/or selling a "fake" or "fraudulent" product that negatively impacts the very product it is intended to enhance, "fools" the consumer, "tricks" the phone, "harms" phone performance,  "hurts the public," "is a detriment to public safety," performs poorly, and has no value, would be highly offensive to a reasonable person.

74.    Defendant knew that the statements made about Plaintiffs and/or their product were false and/or Defendant acted with reckless disregard as to whether the statements were true or false, and thus, Defendant acted with actual malice.

75.    As a direct and proximate result, 3XA and Mogo have suffered the damages and injuries previously described, including but not limited to injury and damage to their professional reputations, delay and/or cancelation of anticipated preliminary sales in excess of $1,000,000.00 from anticipated orders of at least 19,300 units from retailers and distributors, including but not limited to DAS, Best Buy, WalMart and RadioShack and the loss of profits and/or royalty fees associated therewith, loss of profits and/or royalty fees associated with anticipated subsequent and continuing orders from the various retailers and distributors, other lost profits, loss of good will, and other compensatory and consequential

damages.

76.     The statements made and actions of Defendant were undertaken with evil motive, were intentional, willful, wanton and outrageous, and therefore, punitive damages are appropriate and warranted.

WHEREFORE, Plaintiffs, 3XA WIRELESS, INC. and MOGO WIRELESS, INC., respectfully request that this Court:

(a)     Enter judgment in their favor and against Defendant, WILSON ELECTRONICS, INC., in an amount to be proven at trial;

(b)     Enter an award of punitive damages;

(c)     Award Plaintiffs their costs and attorneys' fees; and,

(d)     For what other and further relief that this Court deems just and appropriate.

### COUNT VII

**Tortious Interference with Prospective Business Advantage and Relationships**

77.     3XA and Mogo restate, reallege and incorporate by reference the allegations contained in paragraphs 1 through 76 of this Complaint, as if fully set forth herein.

78.     Prior to Defendant's circulation of the First and Second Known Consumer Alerts, Plaintiffs themselves and through their agents had engaged in dialogue and discussions with certain distributors and retailers concerning the distribution and sale of their products, including but not limited to DAS, Best Buy, WalMart and RadioShack.

79.     During said dialogue DAS, Best Buy, WalMart and RadioShack indicated an intention to distribute and/or sell the 3XA/Mogo product in their retail stores and outlet centers.

80.     3XA and Mogo had a reasonable expectation of entering into valid business

relationships with the distributors and retailers to whom the First and Second Known Consumer Alerts were published, including but not limited to DAS, Best Buy, WalMart and RadioShack.

81.     Defendant knew of 3XA's and Mogo's expectancy to enter into valid business relationships with these distributors and retailers for the distribution and sale of the 3XA/Mogo product, including but not limited to DAS, Best Buy, WalMart and RadioShack.

82.     Defendant purposefully and intentionally interfered with 3XA's and Mogo's expectancies by circulating the First and Second Known Consumer Alerts to the very distributors and retailers with whom 3XA and Mogo had been building or attempting to build their business relationships, and others.

83.     As a direct and proximate result of the First and Second Known Consumer Alerts, these distributors and retailers have delayed and/or have now refused to carry the 3XA/Mogo product.

84.     As a direct and proximate result, 3XA and Mogo have suffered damages in an amount to be proven at trial, including but not limited to delay and/or cancelation of anticipated preliminary sales in excess of $1,000,000.00 from anticipated orders of at least 19,300 units from retailers and distributors, including but not limited to DAS, Best Buy, WalMart and RadioShack and the loss of profits and/or royalty fees associated therewith, loss of profits and/or royalty fees associated with anticipated subsequent and continuing orders from the various retailers and distributors, other lost profits, loss of good will, damage to reputation, and other compensatory and consequential damages.

85.     The statements made and actions of Defendant in purposefully and

intentionally interfering with 3XA's and Mogo's expectancies, were undertaken with evil motive, were intentional, willful, wanton and outrageous, and therefore, punitive damages are appropriate and warranted.

WHEREFORE, Plaintiffs, 3XA WIRELESS, INC. and MOGO WIRELESS, INC., respectfully request that this Court:

(a)     Enter judgment in their favor and against Defendant, WILSON ELECTRONICS, INC., in an amount to be proven at trial;

(b)     Enter an award of punitive damages;

(c)     Award Plaintiffs their costs and attorneys' fees; and,

(d)     For what other and further relief that this Court deems just and appropriate.

Respectfully submitted,

Momkus McCluskey, LLC

By:_____/s/ Steven B. Ekker_____
            Steven B. Ekker

Steven B. Ekker
Momkus McCluskey LLC
3051 Oak Grove Road, Ste. 220
Downers Grove, IL 60515
630-434-0400
Attorneys for Plaintiff
Attorney No. 6216016

W:\l_20\1781.080183\Pleadings\3XA MOGO Federal Complaint Final.rtf

19

08CV2867   RQC
JUDGE DOW
MAGISTRATE JUDGE VALDEZ

# EXHIBIT  A

# CONSUMER ALERT



## Call Capture Personal Mobile Cell Tower
## (also known as the MOGO STIX or Cell Ranger)

The "MOGO STIX" Personal Mobile Cell Tower, by Call Capture, negatively impacts the performance of a cell phone. The Call Capture/MOGO fools the user. Its receive-only amplifier increases the bars on the cell phone (which only indicate received signal strength) and has no transmit amplification on the phone's power going to the cell site.

Unlike a properly designed bi-directional cellular booster, which utilizes both a transmit and a receive amplifier, the Call Capture/MOGO does not contain a transmit amplifier to boost the signal from the phone back to the cell site. The weak link in all cell systems is the low power from the phone to the cell site, whereas there is always more power available from the cell site to the phone. The Call Capture/MOGO, in its current form, is the equivalent of half a booster.

On CDMA systems, the amplified receive-only signal, supplied by the Call Capture/MOGO to the phone, tricks the phone into thinking that it is closer to the cell site than

it really is. When the phone thinks it is closer to the cell site, it reduces its output power to the cell site to conserve battery life, which results in no connection between the phone and cell site. In weak areas the Call Capture will cause both incoming and outgoing calls to be dropped. This could be disastrous in an emergency.

We at Wilson Electronics feel an obligation to alert the public to this fake and fraud, which can harm your cell phone's performance. Such a product hurts the public and is a detriment to public safety. It also conveys to the public the impression that all cellular signal amplifiers perform poorly and are of no value. We want consumers to know that cellular signal amplifiers work well when properly engineered.



08CV2867  RCC
JUDGE DOW
MAGISTRATE JUDGE VALDEZ

# EXHIBIT  B

# CONSUMER ALERT



## Call Capture Personal Mobile Cell Tower
## (also known as the MOGO STIX or Cell Ranger)

The "MOGO STIX" Personal Mobile Cell Tower, by Call Capture, negatively impacts the performance of a cell phone. The Call Capture/MOGO fools the user. Its receive-only amplifier increases the bars on the cell phone (which only indicate received signal strength) and has no transmit amplification on the phone's power going to the cell site.

Unlike a properly designed bi-directional cellular booster, which utilizes both a transmit and a receive amplifier, the Call Capture/MOGO does not contain a transmit amplifier to boost the signal from the phone back to the cell site. The weak link in all cell systems is the low power from the phone to the cell site, whereas there is always more power available from the cell site to the phone. The Call Capture/MOGO, in its current form, is the equivalent of half a booster.

On CDMA systems, the amplified receive-only signal, supplied by the Call Capture/MOGO to the phone, tricks the phone into thinking that it is closer to the cell site than it really is. When the phone thinks it is closer to the cell site, it reduces its output power to the cell site to conserve battery life, which results in no connection between the phone and cell site. In weak areas the Call Capture will cause both incoming and outgoing calls to be dropped. This could be disastrous in an emergency.

We at Wilson Electronics feel an obligation to alert the public to this fake and fraud, which can harm your cell phone's performance. Such a product hurts the public and is a detriment to public safety. It also conveys to the public the impression that all cellular signal amplifiers perform poorly and are of no value. We want consumers to know that cellular signal amplifiers work well when properly engineered.

