**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTHERN ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| 3XA WIRELESS, INC., an Illinois corporation, and MOGO WIRELESS, INC., a Georgia corporation, | ) ) ) ) | Civil Action No. 1:08-CV-02867 |
| | ) | Honorable Robert M. Dow Jr. |
| Plaintiff(s), | ) ) | Magistrate Judge Valdez |
| v. | ) ) | |
| WILSON ELECTRONICS, INC., a Utah corporation, | ) ) ) | **DEFENDANT WILSON ELECTRONICS, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY** |
| Defendant. | ) ) ) | |

Defendant Wilson Electronics, Inc. ("Wilson" or "Defendant") hereby moves the Court for an order dismissing, or in the alternative, staying, the above-captioned action ("the Illinois Action") in favor of a previously filed action pending in the United States District Court for the District of Utah, styled *Wilson Electronics v. Call Capture, I.W.R.E., Inc., Mogo Wireless, Inc. and 3XA Wireless, Inc.*, Civil Action No. 2:08-cv-242 TS ("the Utah Action").[1]

The Utah Action was filed some fifty (50) days prior to the filing of the Illinois Action.[2] The allegations and facts in the Utah Action and Illinois Action are substantially the same, as both actions involve the truth or falsity of statements made regarding the performance of the same cellular amplifier products. The Utah and Illinois Actions are flip sides of the same coin. In the Utah Action, Wilson alleges that certain statements attributable to 3XA Wireless, Inc. ("3XA") and/or Mogo Wireless, Inc. ("Mogo") regarding the performance of their cellular amplifiers are false.   In the Illinois Action, 3XA and Mogo allege that Wilson's statements

---

[1] A true and correct copy of the Complaint filed in the Utah Action is attached hereto as Exhibit 1.

[2] The Utah Action was filed on March 27, 2008, and was served on 3XA Wireless, Inc. on April 3, 2008, forty-three (43) days prior to the filing of the Illinois Action.  The Utah Action was served on Mogo Wireless, Inc. on April 4, 2008, forty-two (42) days prior to the filing of the Illinois Action.

concerning the performance of these same cellular amplifiers are false; in other words, that Wilson's statements regarding the falsity of 3XA's and Mogo's statements are themselves false.

Because the Utah Action and the Illinois Action involve the same cellular amplifier products and the same statements and issues regarding the performance of those cellular amplifier products, they are duplicative actions for the purposes of this Court. As such, Wilson respectfully asks that this Court dismiss the Illinois Action in favor of the first-filed Utah Action, or, in the alternative, that this Court stay the Illinois Action pending resolution of 3XA and Mogo's Motion to Dismiss which is currently before the court in the District of Utah.

## I.    BACKGROUND

Wilson manufactures and distributes a wide range of amplifiers, antennas and accessories for use with cellular telephones and other related communication devices. On March 27, 2008, Wilson filed the Utah Action against 3XA, Mogo, and I.W.R.E., Inc.[3], alleging claims for false advertising and violation of the Utah Truth in Advertising Act. These allegations arise from statements made by 3XA, Mogo, and IWRE concerning the performance of certain cellular amplifiers. Specifically, Wilson alleges that the statements made by 3XA, Mogo, and IWRE that their cellular amplifiers provide up to a "50dB System Gain to increase cell phone range," that they "[r]educe[] dropped calls" and "[i]mprove call quality" are both false and misleading to consumers. Wilson has conducted internal testing on the 3XA and Mogo cellular amplifier products, and has determined that the 3xA and Mogo cellular amplifier products actually degrades the ability of a consumer to properly communicate with a cell tower from long distances. Because of this, the use of the 3XA and Mogo cellular amplifier products, at least in some circumstances, prevents a consumer's cell phone from initiating calls from long distances, or will cause incoming calls to be dropped, thereby resulting in a reduction of service quality.

---

[3] I.W.R.E., Inc. is an entity that was engaged by 3XA and Mogo to assist in the marketing and sale of the cellular amplifier products.

After receiving an extension of time to answer or otherwise respond to the Complaint in the Utah Action, rather than file an Answer, Mogo and 3XA filed a Motion to Dismiss, or in the Alternative, to Transfer Venue on May 16, 2008 ("the Motion to Dismiss"). The basis for the Motion to Dismiss is Mogo and 3XA's allegation that they are not subject to personal jurisdiction in the District of Utah. Wilson opposes the Motion to Dismiss, and the parties have stipulated to limited, expedited discovery on the issues related to 3XA and Mogo's Motion to Dismiss and related filings. In the Utah Action, Wilson is seeking an injunction preventing 3XA and Mogo from making the allegedly false and misleading statements about their cellular amplifiers, and also seeks monetary damages.

Concurrently with 3XA and Mogo's filing of the Motion to Dismiss, Plaintiffs filed the Illinois Action on May 16, 2008, a full fifty (50) days after the filing of the Utah Action. The Illinois Action arises from "Consumer Alerts" sent by Wilson to inform consumers regarding the false statements made by 3XA and Mogo regarding the cellular amplifier products. 3XA and Mogo allege that the statements made in the Consumer Alerts are untrue. 3XA and Mogo seek an injunction preventing Wilson from making the statements in the Consumer Alerts, and also seek monetary damages.

## II.    ARGUMENT

### A.    This Court Should Dismiss the Current Proceeding in Favor of the First-Filed Utah Action

Courts should not encourage the simultaneous litigation of two essentially identical claims in separate federal courts. *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989). When two similar actions are filed, the general rule favors the forum of the first-filed suit. *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 832-33 (N.D. Ill. 2004) (citing *MLR, LLC v. U.S. Robotics Corp.*, 2003 WL 685504, *1 (N.D. Ill. Feb. 26, 2003)); *Warshawsky & Co. v. Arcata Nat. Corp.*, 552 F.2d 1257, 1263 (7th Cir. 1977). The Seventh Circuit has held that in the interests of judicial administration and efficiency, a court

will generally either stay its own proceedings or dismiss an action once it learns that an action before it is duplicative of a parallel action already pending in another federal court. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). "District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Serlin*, 3 F.3d at 223 (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill 1983)).

The Seventh Circuit has stated that there exists a rebuttable presumption that the first case that establishes jurisdiction should be allowed to proceed, and the second case should be dismissed. *Asset Allocation*, 892 F.2d at 573; *Inforizons, Inc. v. VED Software Servs., Inc.*, 204 F.R.D. 116, 118 (N.D. Ill. 2001). The plaintiff bears the burden of showing compelling circumstances or an imbalance of convenience to overcome the presumption that the first-filed suit should proceed. *See Asset Allocation*, 892 F.2d at 573.

Both the Utah Action and the Illinois Action involve the same issues. Both actions concern the truth or falsity of statements made by the parties regarding the performance of the same cellular amplifiers. Specifically, the Utah Action involves statements made by 3XA and Mogo regarding the function of their Mogo Stix product and the Mogo Stix product sold under other names, statements which Wilson alleges are untrue. The Illinois Action involves statements made by Wilson about these same products, which 3XA and Mogo allege are untrue. Further, both actions seek injunctive relief as well as monetary damages. As such, the Utah Action and the Illinois Action are duplicative, as the "claims, parties and available relief do not significantly differ between the two actions." *Serlin*, 3 F.3d at 223. Due to the duplicative nature of the claims, there can be no prejudice to 3XA and Mogo if the Illinois Action were dismissed

in favor of the first-filed Utah Action, as 3XA and Mogo's claims can be brought as counterclaims in the Utah Action.

While the Seventh Circuit does not rigidly adhere to the "first to file" rule, *see Schwartz*, 317 F.Supp.2d at 833 (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987)), courts have refused to follow the "first to file" rule only when certain circumstances are present.  These circumstances include those actions where forum shopping motivated the first-filed action or the first-filed action constitutes an "improper anticipatory filing" made under threat of an imminent suit and asserting the mirror-image of that suit in another district.  *Schwartz*, 317 F.Supp.2d at 833.  Other circumstances include where "the first-filed action is trivial in relation to the second-filed action, that the second-filed action has developed further than the first-filed action, or that the first filed action was brought in bad faith."  *Inforizons*, 204 F.R.D. at 118 (citations omitted).

However, in the instant case, none of the recognized exceptions to the "first to file" rule are present.  The Utah Action cannot be characterized as an "improper anticipatory filing," or an attempt by Wilson to forum shop, as there was no threat of imminent suit on the part of 3XA or Mogo at the time the Utah Action was filed.  Rather, it is the *Illinois Action* that can be characterized as an attempt to forum shop on the part of Mogo and 3XA, as they have asked the court in the District of Utah to transfer the Utah Action to the Northern District of Illinois, and have relied, in part, on the existence of the Illinois Action to justify their request.[4]  Further, there are no facts supporting any notion that the Utah Action is trivial or was brought in bad faith.

---

[4] Interestingly, there are three named defendants in the Utah Action: 3XA (a Georgia corporation), Mogo (an Illinois corporation), and IWRE (an Illinois corporation).  The plaintiffs in the Illinois Action are two of the three named defendants in the Utah Action, 3XA and Mogo.  3XA, as a Georgia corporation, can hardly claim any more or less inconvenience of litigating in Utah instead of Illinois, as both the Utah Action and the Illinois Action are located outside of and distant from Georgia.

As such, Wilson respectfully requests that this Court dismiss the Illinois Action in favor of the first-filed Utah Action.  No prejudice can result to 3XA and Mogo as a result of the dismissal, as they will be free to bring their claims in the Utah Action or may re-file their claims in the Northern District of Illinois should the Utah Action be dismissed or transferred.

**B.    At a Minimum, the Illinois Action Should Be Stayed Pending Determination of the Motion to Dismiss in the Utah Action**

If the Court has concerns that 3XA or Mogo will be prejudiced by dismissal of the Illinois Action, then the Court should stay the Illinois Action pending resolution of the Motion to Dismiss in the Utah Action.  When duplicative suits are filed in two federal districts, the first case filed takes priority. *See Caccamo v. Greenmarine Holdings LLC*, No. 01 C 0899, 2001 WL 668929, at *1 (N.D. Ill. Jun. 14, 2001) (Darrah, J.).  As noted previously, the Seventh Circuit has stated that there exists a rebuttable presumption that the first case that establishes jurisdiction should be allowed to proceed, and the second case should be dismissed.  *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989); *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993).

The Utah Action was filed a full fifty (50) days before the Illinois Action, and thus is clearly the first-filed action.  Currently pending before the court in the Utah Action is 3XA and Mogo's Motion to Dismiss, in which it is alleged that the District of Utah does not have personal jurisdiction over 3XA and Mogo.  If the Court is not inclined to dismiss the Illinois Action, then Wilson respectfully requests that the Court stay this action until such time as the jurisdictional issues raised in 3XA and Mogo's Motion to Dismiss in the Utah Action are resolved.  There is no reason to believe that 3XA and Mogo will be prejudiced if the Illinois Action is dismissed.  But if the Court is concerned that prejudice may result, the Court should stay the action pending the resolution of the Motion to Dismiss in the first-filed Utah Action. Indeed, this is the

procedure generally followed by courts in the Seventh Circuit if there is a concern regarding prejudice to a litigant.  *See Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000) (stating that duplicative litigation should be "stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interest."); *Asset Allocation*, 892 F.2d at 571; *Inforizons*, 204 F.R.D. at 118; *Caccamo*, 2001 WL 668929, at *1.

This case is very similar to an action before Judge Darrah in the Northern District of Illinois, Eastern Division.  In *Schnadig Corp. v. Collezione Europa U.S.A.*, 2001 U.S. Dist. LEXIS 9208 (N.D. Ill. July 3, 2001)[5], the plaintiff , Schnadig Corp. ("Schnadig") had filed a complaint alleging patent infringement against the defendant Collezione Europa U.S.A. ("Collezione").  More than a week prior to the filing in the United States Court for the Northern District of Illinois, Collezione had filed a complaint for declaratory judgment against Schnadig in the United States Court for the Middle District of North Carolina.  Schnadig moved the court in the Middle District of North Carolina to dismiss the complaint for lack of personal jurisdiction. Collezione moved the court in the Northern District of Illinois to dismiss or transfer the complaint in favor of the first-filed action in North Carolina, or, in the alternative, to stay the action in the Northern District of Illinois pending the North Carolina court's decision on Schnadig's motion to dismiss.  Judge Darrah in the Northern District of Illinois denied Collezione's motion to dismiss or transfer.  However, Judge Darrah granted the motion to stay, stating that "the reasonable course in the present case is to stay the action until the North Carolina court decides the jurisdiction and transfer matters before it. If the North Carolina court grants the motion and dismisses or transfers that case, then this Court will lift the stay, and this

---

[5] A true and correct copy of the court's decision in *Schnadig Corp. v. Collezione Europa U.S.A.*, 2001 U.S. Dist. LEXIS 9208 (N.D. Ill. July 3, 2001) is attached hereto as Exhibit 2.

action will proceed. If the North Carolina court denies the motion to dismiss or transfer, then this Court can consider whether the present case should be dismissed." *Schnadig*, 2001 U.S. Dist. LEXIS 9208 at *4-5.

Similarly, the imposition of such a stay in the Illinois Action will allow the District of Utah to rule on the currently pending Motion to Dismiss. Depending on the outcome in the Utah Action, this Court can then decide whether to proceed or dismiss the Illinois Action.

## III.    CONCLUSION

Based on the foregoing, Wilson respectfully requests that the Court dismiss the Illinois Action in view of the first-filed Utah Action. In the alternative, Wilson requests that the Court stay the Illinois Action pending the resolution of the Motion to Dismiss filed by Mogo and 3XA in the Utah Action.

Respectfully submitted

DATED September 2, 2008.                    By    /s/ Mircea Tipescu

Timothy Q. Delaney
Mircea Tipescu (Reg. No. 6276053)
BRINKS HOFER GILSON & LIONE
455 North Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, Illinois 60611-5599
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

Thomas R. Vuksinick
Charles J. Veverka
Matthew A. Barlow
WORKMAN | NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Attorneys for Defendant
WILSON ELECTRONICS, INC.

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

DEFENDANT WILSON ELECTRONICS, INC.'S MOTION TO DISMISS OR, IN THE

ALTERNATIVE, TO STAY was served on the 2nd day of September, 2008, to the following

attorneys of record, as follows:


**VIA ECF:**

      James F. McCluskey
      Steven Brian Ekker
      MOMKUS MCCLUSKEY MONROE MARSH & SPYRATOS, LLC
      3052 Oak Grove Road, Suite 220
      Downers Grove, IL 60515-1181
      (630) 434-0400


I declare under penalty of perjury that the foregoing is true and correct.  Executed at

Chicago, Illinois on September 2, 2008.



                        /s/  Mircea Tipescu

C:\NrPortbl\DMS1\MBARLOW\2089418_1.DOC

# EXHIBIT 1

THOMAS R. VUKSINICK (USB No. 3341)
Email: tvuksinick@wnlaw.com
CHARLES J. VEVERKA (USB No. 7110)
Email: cveverka@wnlaw.com
MATTHEW A. BARLOW (USB No. 9596)
Email: mbarlow@wnlaw.com
WORKMAN NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 533-9800

Attorneys for Plaintiff
WILSON ELECTRONICS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| WILSON ELECTRONICS, INC. a Utah corporation, | ) ) ) | Civil Action No. 2:08-CV-242 TS |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| CALL CAPTURE, an Illinois company, I.W.R.E., Inc., an Illinois corporation, MOGO WIRELESS, INC., a Georgia corporation, and 3XA WIRELESS, INC., and Illinois corporation, | ) ) ) ) ) ) | (JURY TRIAL DEMANDED) |
| Defendants. | ) | |

Plaintiff Wilson Electronics, Inc., ("Wilson" or "Plaintiff") complains and alleges against

defendants Call Capture, I.W.R.E., Inc. ("IWRE"), Mogo Wireless, Inc. ("Mogo"), and 3XA

Wireless, Inc. ("3XA"), (collectively, "Defendants") as follows:

## PARTIES

1.     Plaintiff Wilson is a corporation formed and existing under the laws of the State of Utah having its principal place of business at 3301 E. Deseret Drive, St. George, Utah 84790.

2.     On information and belief, Defendant Call Capture is an Illinois company having a principal place of business at 1275 W. Roosevelt Rd., West Chicago, Illinois 60185.

3.     On information and belief, Defendant IWRE is an Illinois corporation having a principal place of business at 1275 W. Roosevelt Rd., Suite 107, West Chicago, Illinois 60185.

4.     On information and belief, Defendant Mogo is a Georgia corporation having a principal place of business at 374 Glenridge Drive, Elijay, Georgia 30540.

5.     On information and belief, Defendant 3XA is an Illinois corporation having a principal place of business at 1900 E. Golf Road, Suite 950, Schaumburg, Illinois 60173.

## JURISDICTION AND VENUE

6.     This is a civil action for false advertising brought by Wilson pursuant to 15 U.S.C. § 1052 *et seq.*

7.     This action arises under the Lanham Act, 15 U.S.C. § 1125(a), and subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(b).

8.     Jurisdiction of this court is also founded upon 28 U.S.C. § 1367 for Wilson's claims arising under state law.

9.     On information and belief, Defendants have transacted business, contracted to supply goods or services and has otherwise purposely availed itself of the privileges and benefits of the laws of the State of Utah, and has committed tortuous acts which have committed injury in this State, and therefore is subject to the jurisdiction of this Court pursuant to § 78-27-24, Utah Code Ann.

2

10.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391.

## BACKGROUND

11.    Wilson manufactures and distributes in interstate commerce a wide range of amplifiers, antennas and accessories for use with cellular telephones and other related communication devices.

12.    On information and belief, Defendants Call Capture and IWRE, acting in concert, manufacture, market and sell in interstate commerce a wireless cellular signal amplifier under the brand name "Call Capture Personal Cell Phone Tower."

13.    On information and belief, Defendants Mogo and IWRE, acting in concert, manufacture, market and sell in interstate commerce a wireless cellular signal amplifier under the brand name "Mogo Stix."

14.    On information and belief, Defendant 3XA acts in concert and participation with the other named defendants in that 3XA is the grantee of a non-transferable FCC Grant of Equipment Authorization for a dual band cellular amplifier, which is to be marked with the FCC Identifier U4O8811960A. The "Call Capture Personal Cell Phone Tower" and "Mogo Stix" are each marked with said FCC Identifier U4O8811960A. (A copy of the FCC Grant of Authorization is attached hereto as Exhibit A.)

15.    Defendants actively compete with Wilson's amplifier and antenna products by and through their manufacturing, marketing, and sale of the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products.

16.    Defendants' advertising for the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" contain identical statements regarding the function of the products.

3

17.     The advertising for the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" claims that these devices provide up to a "50dB System Gain to increase cell phone range." (Copies of representative advertising for both the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products are attached hereto as Exhibit B.)

18.     The advertising for the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" claims that these devices "[r]educe[] dropped calls" and "[i]mprove call quality." (*See* Exhibit B.)

19.     These advertising claims are both false and misleading to consumers.

20.     When used in connection with a cell phone utilizing a CDMA system, the technology and methods employed by the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products actually degrades the ability of a consumer to properly communicate with a cell tower from long distances.

21.     The "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products do not amplify the signal emanating from the consumer's cell phone.

22.     When a consumer is using the "Call Capture Personal Cell Phone Tower" and/or "Mogo Stix" products in connection with a cell phone utilizing a CDMA system, the cell phone is deceived into perceiving that the cell tower is much closer than it actually is. This causes the cell phone to reduce its output signal when in fact it should have increased its output signal to compensate for the increased distance from the cell tower.  At relatively great distances, such a reduction in the cell phone's signal is sufficient to preclude the consumer's cell phone from connecting to the cell tower.

23.     Because of this, the use of the "Call Capture Personal Cell Phone Tower" and/or "Mogo Stix" products, at least in some circumstances, prevents the consumer's cell phone from

4

initiating calls from long distances, or will cause incoming calls to be dropped, thereby resulting in a reduction of service quality.

24.    The advertising literature of the "Call Capture Personal Cell Phone Tower" also claims that "[t]esting has shown the Call Capture product to be the highest performance wireless unit on the market, and all this performance at a lower cost than the competition." The "Call Capture Personal Cell Phone Tower" is not the highest performance wireless unit on the market, as it actually decreases the consumer's ability to make and receive calls when the consumer is distant from a cell tower. There are numerous other wireless amplifiers on the market that have a higher performance than the "Call Capture Personal Cell Phone Tower."

25.    Defendants' false advertising is material to the consumer's purchasing decision, and is intended by Defendants to induce the consumer to buy the "Call Capture Personal Cell Phone Tower" and/or "Mogo Stix" rather than other competing product and have resulted in harm to Wilson in that consumers who purchase the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products are left with the impression that other cellular amplifiers perform poorly when the consumer is distant from a cell tower.

26.    Upon information and belief, consumers have purchased the "Call Capture Personal Cell Phone Tower" and/or "Mogo Stix" products rather than a Wilson product based on Defendants' advertising.

27.    Defendants' false and misleading statements pose a threat to the safety of the consuming public in that consumers are mislead into believing that the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products provide safety and security by ensuring one's ability to communicate via a cell phone when the consumer is distant from a cell tower. However, the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products actually

reduce the consumer's ability to communicate via a cell phone using a CDMA system when the consumer is distant from a cell tower.

28.    Such false and misleading statements potentially harm the cellular amplifier industry as consumers will lose confidence in manufacturers of cell phone amplifiers in general, as the "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products will fail to function as advertised.

**FIRST CLAIM FOR RELIEF**
**False Advertising, 15 U.S.C. § 1125(a)**

29.    Wilson restates, realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

30.    At least Defendants' statements provided above regarding the efficacy of Defendants' "Call Capture Personal Cell Phone Tower" and "Mogo Stix" devices are, on information and belief, false and/or misleading statements of fact and as such constitute false advertising under 15 U.S.C. § 1125(a).

31.    On information and belief, Defendants' false and/or misleading statements were made willfully and Defendant will continue its false advertising unless enjoined by this Court.

32.    As a result of Defendants' acts of false advertising, Wilson has suffered and continues to suffer damages, the exact amount of which Wilson has not yet been determined.

**SECOND CLAIM FOR RELIEF**
**Truth in Advertising, Utah Code Ann. § 13-11a-3**

33.    Wilson restates, realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 of this Complaint as if fully set forth herein.

34.    Utah Code Ann. § 13-11a-3 prohibits persons and companies from engaging in deceptive, misleading and false advertising practices in Utah.    Defendants have engaged in

6

practices in violation of section 3 in the course of their false advertising, as described above, including at least "represent[ing] that goods or services have ... uses, benefits, or qualities that they do not have[.]".

35.    As a result of Defendants' acts of false advertising, Wilson has suffered and continues to suffer damages, the exact amount of which Wilson has not yet been determined.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wilson seeks judgment against Defendants as follows:

1.    For a judgment of false advertising pursuant to 15 U.S.C. § 1125(a);

2.    For a preliminary and permanent injunction, under 15 U.S.C. § 1116, restraining and enjoining each and every Defendant, their agents, servants, employees, officers and those persons in act of concert or participation with Defendants, from any false advertising with respect to its "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products;

3.    For an award of costs, profits, and damages, which damages are then trebled, under 15 U.S.C. § 1117, for Defendants' false advertising with respect to their "Call Capture Personal Cell Phone Tower" and "Mogo Stix" products;

4.    For declaration that this is an exceptional case under 15 U.S.C. § 1117, and for an award of Wilson's attorneys' fees;

5.    For an award of actual damages sustained by Wilson or $2,000, whichever is greater, under Utah Code Ann. § 13-11a-4(2)(b);

6.    For an award of costs and attorneys' fees under Utah Code Ann. § 13-11a-4(2)(c);

7.    For an order directing Defendants to promulgate corrective advertising by the same media and with the same distribution and frequency as the advertising found to be false, under Utah Code Ann. 13-11a-4(3);

8.    For an order directing Defendants to recall and destroy any and all products, packaging and advertising containing such false statements; and

9.    For such other and further relief as the Court in its discretion deems appropriate.

### DEMAND FOR JURY TRIAL

Wilson hereby demands trial by jury as to all issues in this action triable by a jury.

DATED this 27th day of March, 2008.

WORKMAN | NYDEGGER

By:  /s/ Matthew A. Barlow
               Thomas R. Vuksinick
               Charles J. Veverka
               Matthew A. Barlow

               Attorneys for Plaintiff
               WILSON ELECTRONICS, INC.

J:\1555531\001 Complaint.doc

THOMAS R. VUKSINICK (USB No. 3341)
Email: tvuksinick@wnlaw.com
CHARLES J. VEVERKA (USB No. 7110)
Email: cveverka@wnlaw.com
MATTHEW A. BARLOW (USB No. 9596)
Email: mbarlow@wnlaw.com
WORKMAN NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 533-9800

Attorneys for Plaintiff
WILSON ELECTRONICS, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WILSON ELECTRONICS, INC. a Utah corporation, | Civil Action No. 2:08-CV-242 TS |
| Plaintiff, | |
| v. | (JURY TRIAL DEMANDED) |
| CALL CAPTURE, an Illinois company, I.W.R.E., Inc., an Illinois corporation, MOGO WIRELESS, INC., a Georgia corporation, and 3XA WIRELESS, INC., and Illinois corporation, | |
| Defendants. | |

EXHIBITS A AND B TO COMPLAINT

# EXHIBIT A

Case 1:08-cv-02867     Document 28-2     Filed 09/02/2008     Page 12 of 19
FCC - OET TCB Form 731 Grant of Equipment Authorization                    Page 1 of 1
Case 2:08-cv-00242-TS     Document 3-2     Filed 03/27/2008     Page 1 of 1

# TCB

**GRANT OF EQUIPMENT AUTHORIZATION**

# TCB

Certification

Issued Under the Authority of the

Federal Communications Commission

By:

Elite Electronic Engineering, Inc.
1516 Centre Circle
Downers Grove, IL 60515

Date of Grant: 05/03/2007

Application Dated: 05/03/2007

3XA Wireless Inc.
300 River Bend Drive
Genoa, IL 60135

Attention: Daniel Avicola , President

**NOT TRANSFERABLE**

EQUIPMENT AUTHORIZATION is hereby issued to the named GRANTEE, and is VALID ONLY for the equipment identified hereon for use under the Commission's Rules and Regulations listed below.

**FCC IDENTIFIER: U4O8811960A**
**Name of Grantee:** 3XA Wireless Inc.
**Equipment Class:** PCS Licensed Transmitter
**Notes:** Dual Band Cellular Amplifier

| Grant Notes | FCC Rule Parts | Frequency Range (MHZ) | Output Watts | Frequency Tolerance | Emission Designator |
|---|---|---|---|---|---|
| | 22H | 869.0 - 894.0 | 0.016 | Amp | D1F |
| | 22H | 869.0 - 894.0 | 0.016 | Amp | GXW |
| | 22H | 869.0 - 894.0 | 0.016 | Amp | F9W |
| | 22H | 869.0 - 894.0 | 0.016 | Amp | DXW |
| | 24E | 1930.0 - 1990.0 | 0.016 | Amp | D1F |
| | 24E | 1930.0 - 1990.0 | 0.016 | Amp | GXW |
| | 24E | 1930.0 - 1990.0 | 0.016 | Amp | F9W |
| | 24E | 1930.0 - 1990.0 | 0.016 | Amp | DXW |

Single channel repeater. The antenna installation and operating configurations of this transmitter, including antenna gain and cable loss must satisfy MPE categorical Exclusion Requirements of Para. 2.1091. The antenna(s) used for this transmitter must be installed to porvide a separation distance of at least 20 cm from all persons and must not be co-located or operating in conjuction with any other antenna or transmitter. Users and installers must be provided with antenna installation instructions and transmitter operating conditions for satisfying RF exprosure compliance.

# EXHIBIT B

# MoGo WIRELESS

## "For Life On The Go, MoGo"

### Improve Cell Phone Performance with "Max Bar Technology"

**Mogo - 8811960A & Mogo - 8811960B**

**Features**

- Increases Signal Bars on Your Cell Phone and Wireless Air Card at the same time
- Easy to Set Up, Just Plugs into your Laptop or cigarette lighter
- Wireless-No Physical Connection with Handset
- Up to 50 dB System Gain To Increase Cell Phone Range
- Amplifies 800Mhz and 1900Mhz Signals
- Reduces Dropped Calls
- Improve Call Quality & Data Performance
- Protects the carrier network using Max Bar patent pending technology



- MOGO Wireless products will solve all your cellular coverage needs in your Office, Home, Car, Boat & RV.

- Use with multiple cell phones and carriers at the same time.

- Wireless— No Connections to cell phone, laptop or PDA.

- The patent pending software controls the units operation and is constantly adjusting the units performance for maximum voice quality.

- System works with all PCS or Cellular Carriers* T Mobile, Verizon, AT&T, Sprint, Alltel (*Nextel sold separately).

| Models | Part Number | Description |
|---|---|---|
| Mogo-Stix | 8811960A | Cigarette lighter compatible |
| Mogo-Port | 8811960B | USB Port compatible |

www.mogowireless.net



**PERSONAL MOBILE
CELL TOWER**
BOOST YOUR BARS

Features:
- ☑ Increases Signal Bars on Your Cell Phone
- ☑ Reduces Dropped Calls
- ☑ Improved Call Quality
- ☑ Easy to Set-up, Plugs into Your Cigarette Lighter
- ☑ 50dB System Gain to Increase Cell Phone Range
- ☑ Amplifies 800Mhz and 1900Mhz Signals

Everything You Need is Included:
- ☑ Dual Band Amplifier
- ☑ Magnet Mount Antenna with RF Cable
- ☑ Usage Instructions



**EASY AS 1, 2, 3 INSTALLATION**

  





**WWW.CALLCAPTUREUSA.COM**

8  51160 00125  9

## The Real Story on Power Output

Call Capture is a complete system – including 0.6W amplifier, antennas and power cable – designed to boost a user's cellular signal while driving in his or her vehicle. A couple key benefits are a reduction in dropped cellular calls and improvement in call clarity.

Testing has shown the Call Capture product to be the highest performance wireless unit on the market, and all this performance at a lower cost than competition. This product has been shown to consistently increase your signal bars in poor areas, your talk time and reduce dropped calls

Some companies would have you falsely believe that their product is higher power and therefore better. The facts are a wireless system the <u>System Gain</u> is what is important to be able to achieve the correct output power. Our Patent Pending **ADAPT™** Software automatically adjusts power levels. From 4 to 8 feet which is the average distance from the cell phone to the pick up antenna, the Call Capture unit gave higher output power in all these real life conditions. The higher gain also allows you to drive a much further distance from the cell site and still receive a good signal.

Cellular networks are designed to work with phones emitting a maximum of 0.6W, equaling the maximum output of the Call Capture amplifier. <u>Competitive 2W and 3W amplifier systems may actually disrupt the cellular network, resulting in lower cellular phone performance.</u> By transmitting higher power, the system may become unbalanced in the handoff mode between cell sites. Instead of a call being handed off, a higher power unit may actually hold on to the passing signal for too long potentially causing poor audio quality and a dropped call.

# EXHIBIT 2

**SCHNADIG CORPORATION, Plaintiff, v. COLLEZIONE EUROPA U.S.A., Defendant.**

**No. 01 C 1697**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2001 U.S. Dist. LEXIS 9208*

**July 3, 2001, Decided
July 5, 2001, Docketed**

**DISPOSITION:** [*1] Collezione's Motion to Dismiss or Transfer denied and Collezione's Motion to Stay granted.

**COUNSEL:** For SCHNADIG CORPORATION, plaintiff: Jeremy R. Kriegel, Tilton, Fallon, Lungmus & Chestnut, Chicago, IL.

For SCHNADIG CORPORATION, plaintiff: John W. Chestnut, Greer, Burns & Crain, Ltd., Chicago, IL.

For COLLEZIONE EUROPA U.S.A., defendant: Susan Somers Neal, Kevin J. McDevitt, Neal & McDevitt, Evanston, IL.

**JUDGES:** JOHN W. DARRAH, United States District Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Schnadig Corporation (Schnadig), filed a complaint against defendant, Collezione Europa (Collezione), alleging patent infringement. Before the Court is defendant's Motion to Dismiss, Transfer, or Stay the Proceedings.

On March 2, 2001, Collezione filed a complaint for declaratory action in the United States Court for the Middle District of North Carolina against Schnadig. Collezione seeks a declaration of non-infringement, invalidity, and unenforceability of United States Design Patent Nos. 422,811 (Patent 811) and 424,839 (Patent 839). On March 9, 2001, Schnadig filed suit against Collezione in this District, alleging patent infringement of Patent 839. [*2] On May 2, 1001, Schnadig amended its complaint, adding an allegation of infringement of Patent 811. Presently pending before the North Carolina court is Schnadig's Motion to Dismiss or Transfer and before this Court, Collezione's Motion to Dismiss, Transfer, or Stay the Proceedings.

Collezione argues that this suit should be dismissed to conserve judicial resources since the North Carolina action was filed first. Schnadig does not dispute that the North Carolina action was filed first or that the two cases involve a dispute over the same two patents. Schnadig argues that the North Carolina court does not have subject matter jurisdiction over Patent 811; therefore, the suit in this Court should proceed because it is the only court with subject matter jurisdiction over both patents. Schnadig's motion to dismiss or transfer the North Carolina suit is presently pending in the North Carolina court. [1]

1　The parties' briefs do not indicate the basis of Schnadig's motion before the North Carolina court. In its response to this motion, Schnadig argues at length that the North Carolina court does not have subject matter jurisdiction over Patent 811. Presumptively, this is the same basis of Schnadig's motion to dismiss before the North Carolina court.

[*3]

A federal court has a great deal of latitude and discretion to dismiss a suit for reasons of wise judicial administration. *Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 629 (7th Cir. 1995).* Generally, when mirror-image suits are filed in two federal districts, the first case takes priority. "Where a declaratory judgment action and a mirror image patent infringement suit are filed, the general rule is that the forum of the first-filed suit is favored, regardless of whether it is the declaratory judgment action." *Solo Cup Co. v. Fort James Corp., 1999 U.S. Dist. LEXIS 18586, 1999 WL 1140885 (N.D.Ill. Nov. 29, 1999)* citing *Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937-38 (Fed. Cir. 1993).* However, if jurisdiction cannot be obtained over a party or a claim, favoring the first-filed suit may not be appropriate. *See Colborne v. MC Retail Foods, 1995 U.S. Dist. LEXIS 11219, 1995 WL 470226 (N.D.Ill. Aug. 7, 1995) (Colborne).*

Without the North Carolina court's ruling on the pending motion to dismiss or transfer, this Court is unable to determine if the first-to-file rule should be followed or if Schnadig has presented a compelling circumstance to [*4] allow this action to proceed. Accordingly, Collezione's Motion to Dismiss or Transfer is denied as premature. *See Colborne, 1995 WL 470226 at *1 (denying motion to dismiss because the jurisdiction of the court of the first-filed suit was in question).

In the alternative, Collezione seeks to stay the present case pending the disposition of the North Carolina action. The court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones, 520 U.S. 681, 706, 137 L. Ed. 2d 945, 117 S. Ct. 1636 (1997)* (citation omitted).

Schnadig argues that there is no justification to stay this action because the facts clearly establish that the North Carolina court does not have subject matter jurisdiction over Patent 811. However, that is a determination to be made by the North Carolina court, not this Court.

The reasonable course in the present case is to stay the action until the North Carolina court decides the jurisdiction and transfer matters before it. If the North Carolina court grants the motion and dismisses or transfers that case, then this Court will lift the stay, and this action will proceed. If the [*5] North Carolina court denies the motion to dismiss or transfer, then this Court can consider whether the present case should be dismissed. *See Colborne, 1995 WL 470226 at *1 (finding that staying the second-filed suit appropriate when a motion to dismiss for lack of jurisdiction was pending in the first-filed action).

For the reasons stated above, Collezione's Motion to Dismiss or Transfer is denied, and Collezione's Motion to Stay is granted. The parties are instructed to submit the North Carolina court's ruling on the presently pending motion to dismiss or transfer to this Court as soon as it is issued.

Dated: July 3, 2001

JOHN W. DARRAH

United States District Judge